[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The marriage of the parties was dissolved on March 3, 1993, at which time a separation agreement between the parties was incorporated into the judgment by reference. At the time of the dissolution and for years prior thereto, the plaintiff and the defendant were both employed as insurance agents by the same agency, Sundel Milford, Inc. The defendant husband owned fifty percent of the stock of that corporation; the plaintiff wife's father, Meyer Sundel, owned the remaining fifty percent of the stock. The principal office of the agency was in Waterbury; the plaintiff wife, however, worked in the agency's office in Southbury.
The separation agreement provided in Article XI:
 The Husband shall retain all of his right, title and interest in the stock of SUNDEL MILFORD, except that the Wife shall continue to operate the Southbury Office of SUNDEL MILFORD and will continue to receive a salary (not less than the current salary) from that office as compensation. SUNDEL MILFORD shall continue to pay for the Wife's automobile, Insurance (Auto, health life), Pension, Gas, Country Club dues and the office rent and overhead for the Southbury Office. This provision shall be the subject of an Agreement between SUNDEL MILFORD and the Wife and the Husband shall be prohibited from taking any individual action, or exercising his stock in a manner
CT Page 9708 so as to interfere with the Wife's rights as set forth in this Agreement or the anticipated Agreement with SUNDEL MILFORD.
(Emphasis added.) Because of the incorporation of the separation agreement into the terms of the judgment, this provision formed part of the dissolution judgment.
The employment agreement was also drafted and executed prior to the entry of judgment of dissolution. Paragraph 2 of the employment agreement provides in pertinent part:
 The Corporation shall maintain a Southbury office during the term of this Agreement and the Employee as Executive Manager of the Southbury office shall, in the exercise of her reasonable judgment, make all decisions regarding the operation of the Southbury office including, but not limited to, location of the office, staffing, services and products to be offered and expenses.
The term of the employment agreement extends through December 31, 2005.
In February, 1996, Meyer Sundel retired and left the employ of the agency. Pursuant to the terms of a shareholders' buy-sell agreement, the defendant then became the owner of all of the stock of the agency. He also became the president of the corporation.
In late September, 1996, the defendant sent the plaintiff a letter informing her that Sundel Milford had decided to close the Southbury office effective October 31, 1996 and that he had notified the landlord that the Southbury office would be vacated as of that date. He gave the plaintiff the choice of working out of the Waterbury office or her home. He also informed her that clients of the Southbury office would receive notice that their needs would be serviced from the Waterbury office and that the plaintiff could be contacted at the Waterbury office.
The defendant did not consult the plaintiff before he closed the Southbury office nor did he ask her to reduce the expenses of the Southbury office, although he claimed that the office was being closed due to "declining profitability." He had not visited the Southbury office for six or seven months prior to sending the plaintiff notice that he would be closing the office. CT Page 9709
The plaintiff's clientele is located outside the City of Waterbury, primarily in Southbury. The Southbury office is a convenience and service for her clients, who do not want to travel to Waterbury. The plaintiff credibly testified that her earnings will be reduced if she is forced to work out of the Waterbury office. Although the plaintiff's base salary is guaranteed, the employment agreement provides for a bonus based on insurance policy renewals.
The plaintiff filed an application for contempt on October 11, 1996. The application was served on the defendant on October 15, 1996. On the following day, October 16, 1996, the defendant mailed postcards to all the clients of the Southbury office informing them of the closing of the office. Again, he did not give the plaintiff any notice that he would be sending such notices. The plaintiff learned of the mailing when upset customers of hers called her at home, telling her that they did not want to use the Waterbury office.
By the time of the hearing on the plaintiff's application for contempt, the Southbury office was closed. The electricity was turned off and the phone was changed so as to ring in the Waterbury office. In response to the plaintiff, who contends that the closing of the Southbury office is in violation of the dissolution judgment, the defendant makes two claims. The first is that under the terms of the employment agreement between the plaintiff and the agency, the disagreement about the closing of the Southbury office must be submitted to arbitration.
The employment agreement does contain an arbitration provision, the pertinent portion of which provides:
 In the event of any dispute between the parties hereto as to the interpretation or application of this Agreement which cannot be resolved by the parties hereto . . . such dispute shall be settled by arbitration at Waterbury, Connecticut, as follows . . .
The defendant's reliance on this provision is misplaced. First, he is not a party to the employment agreement, which is between the plaintiff and the corporation; he has not shown how he as a non-party has the right to enforce the arbitration provision. Secondly, assuming he has such a right, he has not shown that there is any dispute as to the "interpretation or application" of CT Page 9710 the agreement. The issue before the court is whether the defendant is in contempt of court for violating the terms of a judgment of this court. There is no issue of interpretation or application of the employment agreement. Moreover, even if the arbitration provision were more broadly drafted to include all disputes arising out of the plaintiff's employment at the agency, such a provision should not be interpreted in such a way as to deprive the court of its important inherent power to enforce its own judgments.
The defendant's second claim is even less tenable. He argues that he is not in violation of the dissolution judgment because he did not terminate the plaintiff's employment; he simply made her employment more "inconvenient," his "sole reason" for doing so being to make the agency more profitable. With respect to this claim the court finds that the defendant was not credible in his testimony that he was motivated to close the Southbury office solely by the desire to increase the agency's profit. Moreover, the dissolution judgment does not prohibit only the plaintiff's termination of employment. It prohibits the defendant "fromtaking any individual action, or exercising his stock in a mannerso as to interfere with the wife's rights . . ." as set forth in the separation agreement and the employment agreement. All interference with the plaintiff's employment in Southbury is barred. Furthermore, there is no exception to the defendant's objection to refrain from interfering with the plaintiff's employment. Declining profitability, if it existed, is not a basis under the agreements or the judgment for closing the Southbury office.
The defendant acted in violation of the separation agreement and the dissolution judgment when, within months after acquiring ownership of all of the stock of the agency and after becoming its president, he closed the agency's Southbury office, which is required to be maintained for the plaintiff's benefit until December 31, 2005. The court further finds that this conduct by the defendant was wilful and therefore constitutes contempt of a judgment of this court. Jenks v. Jenks, 39 Conn. App. 139, 142
(1995).
The plaintiff's application for contempt is granted and the defendant is ordered to reopen a Southbury office of the agency as soon as possible and in accordance with the terms of the employment agreement, which gives the plaintiff the right to make "all decisions regarding the operation of the Southbury office CT Page 9711 including . . . location of the office." The defendant is further ordered to pay the plaintiff's attorney's fees of $2,737.50 and costs of service of $66.60.
VERTEFEUILLE, J.